**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **DAVID CRUZ, VALENTIN REYES,** § | | |
| **AND JONATHAN RYAN** § | | |
| § | CIVIL ACTION NO. | |
| Plaintiffs, § | 5:16-CV-67 | |
| § | | |
| v. § | | |
| § | | |
| **GREG ABBOTT, IN HIS OFFICIAL** § | | |
| **CAPACITY AS GOVERNOR OF THE** § | | |
| **STATE OF TEXAS, STEVEN C.** § | | |
| **MCCRAW, IN HIS OFFICIAL** § | | |
| **CAPACITY AS DIRECTOR OF THE** § | | |
| **TEXAS DEPARTMENT OF PUBLIC** § | | |
| **SAFETY, AND CYNTHIA "CINDY"** § | | |
| **LEON, FAITH JOHNSON, MANNY** § | | |
| **FLORES, STEVEN P. MACH, AND** § | | |
| **RANDY WATSON, IN THEIR** § | | |
| **OFFICIAL CAPACITIES AS** § | | |
| **MEMBERS OF THE TEXAS PUBLIC** § | | |
| **SAFETY COMMISSION** § | | |
| § | | |
| Defendants § | | |

## **COMPLAINT**

1. Since 2012, the U.S. Circuit Courts of Appeals have struck down, on federal preemption grounds, immigrant harboring laws in Arizona, Alabama, Georgia, Pennsylvania, and South Carolina. In 2013, the Fifth Circuit also struck down, as preempted by federal law, an immigrant harboring law enacted by Farmers Branch, Texas.

2. In its 2015 Regular Session, the Texas Legislature passed, and Governor Abbott subsequently signed into law, a state immigrant harboring law.

3. This action challenges §§ 14 (a) (2), 15 (a), and 16 (a) (17) of House Bill 11 ("HB 11's harboring provisions") under the U.S. Constitution and seeks declaratory and injunctive relief to halt their implementation and enforcement.[1]

## JURISDICTION AND VENUE

4. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' causes of action under the laws and Constitution of the United States. This Court has original jurisdiction over Plaintiffs' request for declaratory and injunctive relief under 28 U.S.C. § 2201 and § 2202. Venue is proper in this District under 28 U.S.C. § 1391 (b).

## PARTIES

**<u>Plaintiffs</u>**

5. Plaintiff David Cruz is a property owner and the lessor of two single-family homes and two duplexes in the City of San Antonio.

6. Plaintiff Cruz currently receives monthly rental income in the amount of approximately $3,130 from the rental of his properties. Plaintiff Cruz is semi-retired, works only part-time, and relies on the rental income to pay the mortgages on his properties and to support himself.

7. Plaintiff Cruz has entered leases to rent his properties to their current tenants. When the terms of the leases are over, or if the leases are terminated before the end of their stated periods, Plaintiff Cruz will renew the leases with the current tenants or seek new

---

[1] Plaintiffs identify HB 11 subsections according to the ordering of the amended statute. For example, HB 11 § 14 (a) (2) refers to subsection (a) (2) of Texas Penal Code § 20.05, which HB 11 § 14 amends; HB 11 § 15 (a) refers to subsection (a) of Texas Penal Code § 20.06, which HB 11 § 15 adds to the code; and HB 11 § 16 (a) (17) refers to subsection (a) (17) of Texas Penal Code § 71.02, which HB 11 § 16 amends.

occupants for his rental properties.  Plaintiff Cruz will continue to lease his properties for the foreseeable future.

8.  Plaintiff Cruz does not require his tenants to reveal their citizenship or immigration status before occupying his properties, and he does not know the immigration status of his present tenants.  Plaintiff Cruz does not believe that a tenant's immigration status is relevant to the safety or security of his properties.  Plaintiff Cruz believes that inquiring into his tenants' immigration status is an invasion of their privacy and might deter them from renting from him.

9.  Plaintiff Valentin Reyes is a property owner and lessor of a single-family home in Farmers Branch, Texas.

10. Plaintiff Reyes's property has been owned by his family for over 30 years and has an appraised value of over $120,000.

11. Plaintiff Reyes currently receives monthly rental income from the rental of his property and relies on this income to pay the mortgage on his property.

12. Plaintiff Reyes has entered a lease to rent his property to its current tenants. The lease can terminate at any time if the tenants do not comply with its terms.

13. When the term of the lease is over, or if the lease is terminated before the end of its stated period, Plaintiff Reyes will renew the lease with the current tenants or seek new occupants for his rental property.

14. Plaintiff Reyes has rented his property in the past to immigrants and plans to continue to do so for the foreseeable future.

15. Plaintiff Reyes does not require his tenants to reveal their citizenship or immigration status prior to occupying his property. Plaintiff Reyes does not believe that a tenant's immigration status is relevant to the safety or security of his property and believes that inquiring into his tenants' immigration status is an invasion of their privacy.

16. Plaintiff Jonathan Ryan is the Executive Director of the Refugee and Immigrant Center for Education and Legal Services (RAICES).  RAICES provides free and low-cost legal services to underserved immigrant children, families, and refugees in Central and South Texas.  RAICES also operates Casa RAICES and La Casita, temporary shelters that provide safe post-release services to immigrants leaving detention centers. These services include hospitality, reception, overnight residential  accommodation, and orientation to the legal processes.

17. In his role as Executive Director of RAICES, Plaintiff Ryan provides shelter to immigrant women and children who are not authorized to be present in the U.S. and lack lawful immigration status.  Many of the immigrant women and children sheltered by Plaintiff Ryan are asylum-seekers from East Africa and Central America who entered the U.S. without authorization and are in federal removal proceedings.  Plaintiff Ryan provides shelter to immigrants seeking assistance at Casa RAICES and La Casita and also provides them food, clothing, and local transportation during their stay at the shelters. Individuals who receive shelter at Casa RAICES and La Casita usually contribute to the maintenance of the shelters by performing chores including sweeping the floors, making beds, doing laundry, and taking out the trash.  Plaintiff Ryan also provides backpacks to people in the Casa RAICES shelter, as well as to those in transit.

4

These backpacks contain basic hygiene items, small food items, blankets, and diapers. RAICES, Casa RAICES, and La Casita do not screen the people they serve for immigration status or authorization to be present in the United States.

18. Plaintiff Ryan also works at the offices of RAICES in downtown San Antonio where RAICES attorneys and other staff provide legal services to undocumented immigrant clients pro bono and for reduced fees.  RAICES sees clients on a walk-in basis on several days per week.  Because there is a high demand for legal services at RAICES, prospective clients line up and wait outside the doors of RAICES before it opens in the mornings to see walk-in clients.  On those mornings, prospective clients are easily visible to state and local law enforcement while they wait outside and later enter the offices of RAICES. Plaintiff Ryan and the other employees of RAICES provide a safe space for undocumented individuals to seek immigration advice and services and also accept fees for their services to clients.

19. Mr. Ryan fears for the wellbeing of vulnerable clients of RAICES, Casa RAICES, and La Casita who could be stopped, detained, arrested, and questioned under HB 11's harboring provisions. Plaintiff Ryan fears that he could be subject to prosecution under HB 11's harboring provisions for performing work that is central to his role as Executive Director of RAICES.  He further fears that the current and prospective employees and volunteers at RAICES, Casa RAICES, and La Casita will be deterred from seeking or performing work with the organization's clients for fear of being investigated, arrested, and prosecuted under HB 11's harboring provisions.  In addition, Plaintiff Ryan believes that

5

undocumented individuals will be deterred from seeking humanitarian and legal help from the shelters because of HB 11's harboring provisions.

**Defendants**

20. Defendant Greg Abbott is Governor of Texas. Defendant Abbott is sued in his official capacity. Defendant Abbott is the chief executive officer and the chief law enforcement officer of the State of Texas. Defendant Abbott is responsible for ensuring that the laws of Texas are faithfully executed, including HB 11's harboring provisions.

21. Defendant Steven C. McCraw is the Director of the Texas Department of Public Safety (DPS). He also serves as the Governor's Homeland Security Advisor. Director McCraw was appointed to his position by the Texas Public Safety Commission and is directly responsible to the Commission for the operations of DPS, including enforcement of HB 11's harboring provisions. Defendant McCraw adopts rules, subject to Commission approval, considered necessary for the operation of DPS. Defendant McCraw is sued in his official capacity.

22. Defendant Cynthia "Cindy" Leon is a member of the Texas Public Safety Commission. Defendant Leon is sued in her official capacity.

23. Defendant Faith Johnson is a member of the Texas Public Safety Commission. Defendant Johnson is sued in her official capacity.

24. Defendant Manny Flores is a member of the Texas Public Safety Commission. Defendant Flores is sued in his official capacity.

25. Defendant Steven P. Mach is a member of the Texas Public Safety Commission. Defendant Mach is sued in his official capacity.

6

26. Defendant Randy Watson is a member of the Texas Public Safety Commission. Defendant Watson is sued in his official capacity.

## FACTUAL ALLEGATIONS

### Texas DPS and the Texas Public Safety Commission

27. The Texas Department of Public Safety (DPS) is an agency of the state that enforces public safety laws and provides for the prevention and detection of crime.  DPS is composed of the Texas Rangers, the Texas Highway Patrol, the administrative division, and other divisions that the commission considers necessary. Tex. Govt. Code § 411.002. DPS and the Texas Highway Patrol (also known as state troopers) function as the state police of Texas.

28. The Texas Public Safety Commission oversees DPS. Tex. Govt. Code § 411.003.  Its five members are appointed by the Governor and confirmed by the state senate for staggered, six-year terms.  The Public Safety Commission formulates plans and policies for enforcement of state criminal laws, supervises the operation of DPS, and adopts rules to carry out the work of DPS.  Tex. Govt. Code § 411.004.

### House Bill 11

29. The harboring provisions of HB 11 are components of an $800 million border security effort undertaken by the Texas Legislature in 2015.

30. As enacted, HB 11 includes, among other things:  the creation of a transnational and organized crime division in Texas "to address matters related to border security and organized crime" and provide the support of the Texas Attorney General's office to local prosecutors; the creation of the Texas Transnational Intelligence Center to collect

intelligence on border crime and cross-border crime; a requirement that DPS provide assistance to federal and local law enforcement authorities working at international checkpoints to find weapons, contraband, and people being smuggled across the border; and the creation of an interim joint legislative committee to study border security.

31. The only new criminal offense created by HB 11 is immigrant harboring.  (HB 11 also narrows the existing offense of concealing a person from law enforcement.)  The remaining provisions of HB 11 are related to providing support to local law enforcement in the form of data collection, training, and assistance with detention and prosecution.

32. The legislative purpose of HB 11 is to assume responsibility for fighting cross-border transgressions, including illegal entry by migrants and the harboring of such migrants, because, in the Legislature's view, the federal government has failed to adequately address border security and immigration issues.

33. HB 11 was introduced in the Texas House of Representatives on March 2, 2015.  In the House floor debate on HB 11, the bill's sponsor, State Rep. Dennis Bonnen, stated, "Texas is taking bold steps to fill the gap where the federal government is not meeting their core responsibilities . . . What this bill helps also do is empower our law enforcement officials to protect our citizens more due to the failure of that federal government in doing their constitutional responsibility[.]"

34. In the legislative hearings on HB 11, multiple witnesses testified that HB 11's immigrant harboring provisions were preempted by federal law and would not withstand constitutional challenge.  Nevertheless, HB 11, which was a priority bill for legislative

leadership in the 2015 Legislative Session, passed the Texas House and Senate without removal of the immigrant harboring provisions.

35. When the Texas Legislature sent HB 11 to the Governor for his signature, Rep. Bonnen declared, "We are going to step forward where Washington fails."

36. On June 9, 2015, Defendant Abbott signed HB 11 into law.  In his signing statement, Defendant Abbott stated, "Texas will not sit idly by while the federal government fails to do its job and secure the border."  The governor commented further to the media:  "The issues exist in the first place because we have a failed federal government that has refused to address the issues to tackle those problems . . . Those are national, federal-based issues that we demand the United States federal government address and solve. Texas is doing what it can do by passing this border security plan."  HB 11 became effective on September 1, 2015.

37. On December 10, 2015, the Texas Legislature's House Committee on State Affairs met to examine "state and local laws applicable to undocumented immigrants throughout the State of Texas[.]"   At the hearing, Defendant McCraw testified that DPS had enforced the harboring provisions of HB 11 following an incident of kidnapping.  Defendant McCraw claimed that, because of the availability of the harboring provisions of HB 11, state troopers could make the arrests, and the local district attorney could prosecute, even if the U.S. Border Patrol and U.S. Attorney's Office declined the case.

38. On December 15, 2015, Defendant Abbott announced the award of grants totaling $4.2 million to the Border Prosecution Unit.  Defendant Abbott stated "This action would not be necessary if the federal government fulfilled its obligation to secure our nation's

border . . . My first and foremost responsibility as Governor is to protect the citizens of Texas, with or without the federal government's help."

39. On December 16, 2015, in a hearing of the House State Affairs Committee, Texas Deputy Attorney General Brantley Starr testified to legislators that although the U.S. Supreme Court has ruled that the federal government has authority over immigration, "You do have the ability to create state-level offenses that have an immigration element to them as long as they are sufficiently unique." Mr. Starr cited the criminal offenses in HB 11 as an example of permissible state law-making in the area of immigration.

40. On January 21, 2016, Defendant Steven McCraw, testified before the Texas Legislature's interim Joint Committee on Border Security. When asked a question about preparations of DPS to enforce HB 11, Defendant McCraw stated, "Yes, we've educated [and] we've trained[.]"

41. Although the immigrant harboring provisions of HB 11 are codified under the heading "Human Smuggling" in the Texas Penal Code, several existing Texas statutes protect the public from human smuggling, including the state's kidnapping statute (Tex. Penal Code § 20.03), unlawful restraint statute (Tex. Penal Code § 20.02), and human smuggling statute (Tex. Penal Code § 20.05 (a) (1)).

**RELEVANT STATUTORY PROVISIONS**

**Federal Harboring Provision**

42. 8 USC § 1324 (a) (1) (A) (iii) provides:  "Any person who—

knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or

attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation . . . shall be punished as provided in subparagraph (B)[.]"

43. 8 USC § 1324 (a) (1) (A) (iv) is separate from the harboring statute and addresses encouraging or inducing unauthorized aliens to enter the United States.  It provides: "Any person who—

encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law . . . shall be punished as provided in subparagraph (B)[.]"

44. The federal penalty for harboring for the purpose of commercial advantage or private financial gain is a fine or imprisonment up to ten years, or both.  8 USC § 1324 (a) (1) (B) (i), (ii).

45. The federal harboring statute includes no affirmative defense on the basis of familial relationship to the harbored individual.

46. Federal harboring offenses are adjudicated in federal court.

**State Harboring Provisions**

47. Section 14 (a) (2) of HB 11 amended § 20.05 (a) of the Texas Penal Code ("SMUGGLING OF PERSONS") to add the following language creating a new offense of immigrant harboring: "(a) A person commits an offense if the person, with the intent to obtain a pecuniary benefit, knowingly . . . (2)  encourages or induces a person to enter or remain in this country in violation of federal law by concealing, harboring, or shielding that person from detection."

11

48. Section 15 (a) of HB 11 amended the Texas Penal Code to add § 20.06 (a) which creates the new offense of continuous harboring:  "A person commits an offense if, during a period that is 10 or more days in duration, the person engages two or more times in conduct that constitutes an offense under Section 20.05."

49. Section 16 (a) (17) of HB 11 amended § 71.02 (a) of the Texas Penal Code to make immigrant harboring and continuous immigrant harboring eligible for prosecution under the offense of engaging in organized criminal activity: "A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following:  . . . any offense under Section 20.05 or 20.06;

50. HB 11 makes immigrant harboring a state felony of the third degree.  The penalty is imprisonment for a period "not more than 10 years or less than 2 years" and a fine of up to $10,000.  Tex. Penal Code §§ 20.05 (b), 12.34. If the harbored person is under the age of 18, or the harboring creates a substantial likelihood that the harbored person will suffer serious bodily injury or death, the offense is a second-degree felony and the penalty is imprisonment for a period "not more than 20 years or less than 2 years" and a fine of up to $10,000.  Tex. Penal Code §§ 20.05 (b), 12.33.  If the harbored person becomes a victim of sexual assault, or suffers serious bodily injury or death, the offense is a first-degree felony, and the penalty is imprisonment "for life or for any term of not more than 99 years or less than 5 years" and a fine of up to $10,000.  Tex. Penal Code §§ 20.05 (b), 12.32.

12

51.  HB 11 makes "continuous smuggling of persons" a second-degree felony, punished by imprisonment for a period "not more than 20 years or less than 2 years" and a fine of up to $10,000.  Tex. Penal Code §§ 20.06 (e),12.33.  If the harbored person is under the age of 18, or the harboring creates a substantial likelihood that the harbored person will suffer serious bodily injury or death, the offense is a first-degree felony.  Also, if the harbored person becomes a victim of sexual assault, or suffers serious bodily injury or death, the offense is a first-degree felony.  Tex. Penal Code §§ 20.05 (f)-(g),12.32.

52. HB 11 provides an affirmative defense to harboring, "other than an offense punishable under [Tex. Penal Code § 20.05] (b)(1)(A) or (b)(2), that the actor is related to the smuggled individual within the second degree of consanguinity or, at the time of the offense, within the second degree of affinity."  Tex. Penal Code § 20.05 (c).

53. State harboring offenses are adjudicated in state court.

54. The harboring provisions of HB 11 impose substantial criminal penalties on property owners and lessors who lease to undocumented individuals or without regard to immigration status, as well as employees and volunteers of humanitarian organizations who house and provide essential services to undocumented immigrants.

55. Plaintiffs fear imminent prosecution under HB 11, and have no plain, speedy, or adequate remedy at law other than the relief requested in this complaint. Unless enjoined by this Court, the harboring provisions of HB 11 will impermissibly burden the constitutional rights of Plaintiffs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### SUPREMACY CLAUSE OF THE U.S. CONSTITUTION

82.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

83.      Sections 14 (a) (2), 15 (a), and 16 (a) (17) of HB 11 violate the Supremacy Clause, Article VI, Clause 2 of the U.S. Constitution, because they attempt to regulate matters that are exclusively reserved to the federal government, because they operate in a field over which Congress has exercised exclusive authority, and because they conflict and interfere with the implementation and enforcement of federal laws and regulations.

### SECOND CAUSE OF ACTION

### DUE PROCESS CLAUSE OF

### THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

84.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

85.     Sections 14 (a) (2), 15 (a), and 16 (a) (17) of HB 11 deprive Plaintiffs of liberty and property interests without due process of law and are void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment.

THIRD CAUSE OF ACTION

EQUAL PROTECTION CLAUSE OF

THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

84. Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth here.

85. Sections 14 (a) (2), 15 (a), and 16 (a) (17) of HB 11 deprive Plaintiffs of the equal protection of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment.

ATTORNEYS' FEES AND COSTS

Plaintiffs are entitled to an award of reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

i. A declaratory judgment that § 14 (a) (2) of HB 11 is unconstitutional in its entirety, and that §§ 15 (a), and 16 (a) (17) of HB 11 are unconstitutional to the extent that they incorporate § 14 (a) (2);

ii. An injunction prohibiting Defendants and their officials, employees and agents from implementing or enforcing § 14 (a) (2) of HB 11 or §§ 15 (a), and 16 (a) (17) of HB 11 to the extent that they incorporate § 14 (a) (2);

iii. An order awarding Plaintiffs costs and attorneys' fees, under the statutes cited herein, 42 U.S.C. § 1988, and any other applicable law;

iv. Such other and further relief as this Court deems just and proper.

15

DATED:  January 24, 2016                    Respectfully submitted,

/s/ Nina Perales_____
       Nina Perales
       State Bar No. 24005046
       Marisa Bono
       State Bar No. 24052875
       Jack Salmon
       State Bar No. 24068914
       MEXICAN AMERICAN LEGAL DEFENSE AND
       EDUCATIONAL FUND
       110 Broadway St., Suite 300
       San Antonio, TX 78205
       Phone: (210) 224-5476
       Fax: (210) 224-5382

       **Attorneys for Plaintiffs**

16